UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| AARON D. WINDOM, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DUSHAN ZATECKY, *et al.*, )<br>)<br>Defendants. ) | No. 2:21-cv-00304-JPH-MJD |

**ORDER GRANTING STATE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Aaron D. Windom sued defendants Dushan Zatecky, Duane Alsip, Dennis Reagle, Misty Stamper, J.C. Jackson, and Eric Hammond ("State Defendants"), alleging that they subjected him to inhumane conditions of confinement when they exposed him to COVID-19 during April 2020. State Defendants have moved for summary judgment.[1] Dkt. [120]. For the reasons below, that motion is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to

---

[1] Medical Defendants also moved for summary judgment. Dkt. 124. Their motion is being resolved by separate order.

1

the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Plaintiff failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the

undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Windom and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

Mr. Windom is an Indiana Department of Correction ("IDOC") inmate who at all relevant times was housed at Pendleton Correctional Facility ("Pendleton"). Dkt. 121-1 at 37.

State Defendants were all employees of IDOC at Pendleton. Dushan Zatecky was the warden; Dennis Reagle and Duane Alsip were deputy wardens; and Misty Stamper was a program coordinator.[2] Dkt. 23 at 1-2.

### B. Pendleton's COVID-19 Policies

Beginning in March 2020, at the start of the COVID-19 pandemic, Warden Zatecky worked with IDOC Chief Medical Officer Kristen Dauss to implement COVID-19 policies and procedures, including procedures to safely maneuver inmates around Pendleton. Dkt. 121-2 at 1. Warden Zatecky enacted guidelines

---

[2] In its January 5, 2022, Screening Order, the Court did not identify any claims to proceed in this action against defendant Eric Hammond. Dkt. 13 at 6. Although Mr. Hammond has provided evidence in this matter and joined defendants' motion for summary judgment, he is no longer a party to the case. Thus, the Court does not discuss Mr. Hammond.

3

established by IDOC, the Indiana Department of Health, and the CDC, regarding social distancing, maintaining cleanliness, and hand-washing. *Id.* at 1-2. When COVID-19 testing became available, Indiana Department of Health staff began testing inmates at Pendleton. *Id.* at 2.

Ms. Dauss directed that inmates testing positive for COVID-19 should be housed together and those who tested negative should be housed in isolation cells because they were likely already exposed to the virus. *Id.* at 2. At no point in March or April 2020 was an inmate who tested positive for COVID-19 placed in a dorm with inmates who were not known to have tested positive for the virus. *Id.* In order to separate inmates who had tested positive for COVID-19 or who had COVID-19 symptoms from those who did not have COVID-19, Pendleton staff kept the two groups in separate housing units. Dkt. 121-3 at 1.

**C. Mr. Windom's Housing Placement and COVID-19 Illness**

During the first two weeks of April 2020, Mr. Windom was assigned to K Dorm. Dkt. 121-1 at 39. At some point during those two weeks, an inmate who Mr. Windom believes had COVID-19 was moved from the American Legion Dorm to K Dorm. *Id.* at 40-41. Mr. Windom suspects the inmate had COVID-19 because within a day or two of his move to K Dorm, the inmate had a heart attack or stroke and was transported to an area hospital. *Id.* at 40-42.

While Mr. Windom was living in K Dorm, Defendants Reagle and Alsip spoke with the inmates there to update them on facility lockdowns, controlled movements, and meal delivery. *Id.* at 44-45. Mr. Windom stated Defendants Reagle and Alsip told the inmates that nobody would be moved and none of the

4

dorm populations would be mixed. *Id.* at 46. It was Mr. Windom's understanding that those actions were intended to keep inmates separated in order to prevent the spread of COVID-19. *Id.* at 45-46.

In April 2020, Pendleton staff temporarily moved some of the inmates who had been in one-man cells to Pendleton's gymnasium as a precaution in order to clean the facility and isolate inmates with COVID-19 from those who did not have the virus. Dkt. 121-2 at 2. Mr. Windom was moved into the gym after he registered an elevated temperature. Dkt. 121-1 at 20, 43, 46-47. While in the gym, Mr. Windom asked Ms. Stamper if he could go to a cell by himself because he felt unsafe due to the presence of inmates with COVID-19 symptoms and others on breathing machines. *Id.* at 50. However, Ms. Stamper was not involved in moving inmates from one housing unit to another. Dkt. 121-3 at 2.

On April 15, Indiana Health Department staff came and tested all of the inmates in the gym. Dkt. 121-1 at 20.

On April 17, there was a riot in the gym, and Mr. Windom punched a guard. *Id.* at 22-23. As a result, Pendleton staff moved Mr. Windom from the gymnasium to a holding cell in another dorm. *Id.* at 22-23, 53-54. This move contradicted guidance Mr. Windom heard health department officials give Pendleton staff on April 15 directing them not to move any prisoners until they received test results. *Id.* at 51-54.

On April 20, Mr. Windom received a positive COVID-19 result from his April 15 test. *Id.* at 23-24, 51. He experienced shortness of breath, back pain, and a lack of energy. *Id.* at 24.

## III.
## Discussion

Mr. Windom is proceeding on Eighth Amendment conditions-of-confinement and state law indemnification claims.

### A. Conditions of Confinement

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind — that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

In assessing the subjective prong, the question is whether the defendants "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Here, Mr. Windom was moved to the gymnasium at

6

medical staff's direction when he was already experiencing COVID-19 symptoms but before testing was available. Dkt. 121-1 at 19-20, 23-24, 43, 46-47, 51. Because testing was not available until April 15, there is no evidence in the record that defendants knowingly housed Mr. Windom with a Covid-infected inmate. Rather, with one exception, the undisputed evidence shows that Defendants moved inmates around the facility under the guidance of Indiana Department of Health officials and IDOC's Medical Director in order to keep inmates who had no symptoms or negative test results isolated from those, like Mr. Windom, who had COVID-19 symptoms or positive test results. Dkt. 121-2 at 2. The single exception to the defendants' compliance with department of health officials is their movement of Mr. Windom from the gymnasium to a holding cell after a riot in the gymnasium on April 17 three days before his test results arrived on April 20. This move contradicted guidance Mr. Windom heard health department officials give Pendleton staff on April 15 directing them not to move any prisoners until the they received test results. Dkt. 121-1 at 51-54. Because Mr. Windom's April 15 test came back positive, however, the April 17 move cannot be said to have caused any injury to Mr. Windom, nor is there any evidence in the record that this move exposed Mr. Windom to additional known risks.

Because prison officials were trying keep uninfected inmates separate from those who likely already had COVID-19, no reasonable jury could conclude that Defendants' actions placing Mr. Windom in the gymnasium with other symptomatic inmates "approached a total unconcern" for his welfare. *Donald*,

7

982 F.3d at 458; *Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) (vacating preliminary injunction because the inability to implement social distancing measures at a prison was merely "the inability to take a positive action," which "does not constitute a state of mind more blameworthy than negligence") (cleaned up); *see also Shipp v. Lobenstein*, No. 24-2798, 2025 WL 1139257, *3 (7th Cir. Apr. 17, 2025) (affirming summary judgment for warden who kept plaintiff with COVID-19 positive inmate under "cohorting policy" on the basis that warden relied on medical expert's opinion about reducing risk of an outbreak) (citing *Mays v. Dart*, 974 F.3d 810, 823 (7th Cir. 2020)).

Moreover, courts have consistently afforded prison officials more leeway with respect to social distancing efforts due to security needs and the physical constraints of the facilities. *See Swain*, 958 F.3d at 1089; *Hope v. Warden York Co. Prison*, 972 F.3d 310, 330 (3rd Cir. 2020) (citing CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, which provided that social-distancing "strategies will need to be tailored to the individual space in the facility and the needs of the residents and staff."). Mr. Windom was moved out of the gym to a holding cell due to his participation in a violent riot. Thus, rather than displaying deliberate indifference to his risk of illness, State Defendants were trying to restore order and promote safety.

Also, where prisoners' COVID-19 claims have been defeated on the subjective prong of the deliberate indifference inquiry, it was because prison officials had responded reasonably to the virus through a variety of protective

measures. *See Wilson*, 961 F.3d at 841 (protective measures included screening, quarantining sick inmates, limiting group gatherings, screening inmates and staff, enhanced cleaning measures, and providing masks to inmates); *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020) (listing similar measures); and *Swain*, 958 F.3d at 1090 (listing similar measures). Here, Pendleton staff took several steps to protect inmates from contracting COVID-19. In addition to physical separation when possible, Defendants implemented testing by the Indiana Department of Health as soon as it was available. Dkt. 121-2 at 2. Defendants also implemented guidelines established by the Indiana Department of Health and the CDC regarding cleanliness and handwashing. *Id.* at 1-2. Mr. Windom has designated no evidence from which a jury could reasonably find that Defendants were deliberately indifferent to whether he was exposed to and contracted COVID. Defendants' motion, therefore, must be **granted**.[3]

### B. State Law Indemnification Claim

With Mr. Windom's constitutional claims staged for dismissal, the Court has discretion whether to exercise supplemental jurisdiction over his remaining state-law claims. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it

---

[3] Because the Court has concluded that Defendants did not violate Mr. Windom's rights, it need not address their argument that they are entitled to qualified immunity.

9

had original jurisdiction is entirely discretionary."). "Indeed, when the federal claims are dismissed before trial, *there is a presumption* that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (emphasis added).

When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (internal quotation marks and quoted authority omitted).

In the Seventh Circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Sharp Elecs. v. Metropolitan Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (internal quotation marks and quoted authority omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (internal quotation marks and quoted authority).

No circumstance in this case overcomes the presumption that the Court should relinquish jurisdiction over Mr. Windom's state-law claims.

The statute of limitations is not a factor. Both federal and state law toll the relevant limitation period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998).

Neither the parties nor the Court has expended significant resources on the pending state-law claims. Further, comity always favors allowing state courts to decide issues of state law. Having resolved all claims within its original jurisdiction, the Court exercises its discretion and relinquishes supplemental jurisdiction over Mr. Windom's state law claims.

## IV.
## Conclusion

Defendants' motion for summary judgment is **granted**. Dkt. [120]. The Court relinquishes supplemental jurisdiction over Mr. Windom's state law claims.

Final judgment shall issue by separate entry.

**SO ORDERED**.

Date: 9/30/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

AARON D. WINDOM
109441
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

All Electronically Registered Counsel