UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

AARON D. WINDOM,                          )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )     No. 2:21-cv-00304-JPH-MJD
                                          )
DUSHAN ZATECKY, *et al.*,                 )
                                          )
                    Defendants.           )

**ORDER GRANTING MEDICAL DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Aaron D. Windom sued defendants Terrell Gentry and Wexford of Indiana, LLC ("Medical Defendants"), alleging that they were deliberately indifferent to his serious medical needs when they failed to provide adequate medical treatment when he contracted COVID-19.

Medical Defendants have filed a motion for summary judgment.[1] Dkt. [124]. For the reasons below, that motion is **GRANTED**.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine

---

[1] State Defendants also moved for summary judgment. Dkt. 120. Their motion is being resolved by separate order.

dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).

Mr. Windom failed to respond to Medical Defendants' summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); see S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Medical Defendants moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Here, Mr. Windom has not responded to the summary judgment motion, so the Court treats Medical Defendants' supported factual assertions as uncontested. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b), (f).

### A. The Parties

Mr. Windom is an Indiana Department of Correction ("IDOC") inmate who at all relevant times was housed at Pendleton Correctional Facility ("Pendleton"). Dkt. 126-3 at 18.

Mr. Gentry was employed by Wexford of Indiana, LLC, as the Health Services Administrator at Pendleton from December 17, 2018, through April 18, 2020. Dkt. 126-2 at 1. As the health services administrator, Mr. Gentry's duties and responsibilities included administrative paperwork, onboarding new staff, audits related to policy and procedures, payroll, grievances, ordering supplies, and working with other departments to ensure delivery of patient care. *Id.* at 2. His last day of active employment was March 27, 2020, and he did not work at Pendleton in any capacity between March 27 and April 18. *Id.* He did not see Mr. Windom for any medical reason and did not personally provide medical care or

treatment, which would have been outside the scope of his duties. *Id.* at 5. Mr. Gentry was not responsible for administering COVID-19 tests or for treating inmates for COVID-19. *Id.*

Wexford of Indiana, LLC, was the healthcare provider for IDOC when Mr. Windom contracted COVID-19. Dkt. 1 at 2.

### B. Mr. Windom's COVID-19 Infection and Treatment

Mr. Windom's claims concern Medical Defendants' response to his COVID-19 infection. Dkt. 126-3 at 18-19.

Warden Dushan Zatecky worked with IDOC's Central Office and IDOC Medical Director Kristen Dauss to implement policies to prevent the spread of COVID-19, including policies related to housing decisions of inmates who tested positive for the virus. Dkt. 121-2 at 1-2. On April 13 or 14, 2020, State Defendants moved Mr. Windom and a number of other inmates into a gym at Pendleton. Dkt. 126-3 at 20. The purpose of placing inmates in the gym was to clean cells and isolate inmates with COVID-19 from those who had the virus. Dkt. 121-2 at 2.

Mr. Windom believes he was in the gym for approximately four days. Dkt. 126-3 at 20. He believes he was moved to the gym because he had an elevated temperature. *Id.* at 29. On April 15, the Indiana Department of Health tested Mr. Windom and the other inmates in the gym for COVID-19. *Id.* at 20.

On April 17, Mr. Windom punched a custody staff member during a riot in the gym and, as a result, custody staff put him in a holding cell. *Id.* at 22. Mr.

4

Windom had a virtual medical appointment with Nurse John Dallas that day, who ordered ice and Tylenol for Mr. Windom's hand swelling. Dkt. 126-1 at 57.

While Mr. Windom was housed in the holding cell, Nurse Dallas came by and spoke to him, at which time Mr. Windom reported that he was "feeling the Covid symptoms," but was more concerned about his hand injury. Dkt. 126-3 at 22-23.

On April 20, Mr. Windom was informed that his COVID-19 test from five days earlier was positive. Dkt. 126-1 at 56.

After receiving the results, Mr. Windom experienced shortness of breath, minor back pain, and lack of energy. Dkt. 126-3 at 23-24. He informed custody staff of his symptoms and made verbal requests for treatment. *Id.* at 24-25. During his time in the holding cell from April 17 through April 22, he spoke with two nurses, but his conversations were mostly about the pain in his hand, rather than COVID-19 treatment. *Id.* at 26. Mr. Windom requested healthcare request forms while in the holding cell, but he did not submit any requests or grievances. *Id.*

On April 21, Mr. Windom's hand was x-rayed, and a provider submitted a request for an outpatient orthopedic consultation. Dkt. 126-1 at 52-55. On April 22, Mr. Windom was transferred to Westville Correctional Facility, where an

intake assessment was conducted. *Id.* at 40-46. The nurse noted that Mr. Windom had a prescription for Tylenol at that time. *Id.* at 40.

On April 27, a nurse conducted a wellness check, and Mr. Windom reported being "just fine" and that he was in good spirits. *Id.* at 31-32. The nurse recorded that Mr. Windom was asymptomatic for COVID-19. *Id.* at 32.

### C. Mr. Windom's Theories of Liability

During his deposition, Mr. Windom testified that he sued Mr. Gentry because "he was the man in charge of the facility's response to Covid-19," but he did not know that Mr. Gentry ceased active employment at Pendleton on March 27. Dkt. 126-3 at 27-28. Mr. Windom did not personally know who Mr. Gentry was. *Id.*

Mr. Windom sued Wexford because it failed to enact policies to provide adequate medical care and maintained a cost-cutting policy that resulted in his being denied proper treatment for COVID-19. *Id.* at 19. When asked what policy, procedure, or custom of Wexford resulted in his inadequate medical care for COVID-19, Mr. Windom stated,

> When they threw us all into the gym. I feel like when it comes to Covid, you don't throw a bunch of people together and then try to find out who has it and who don't. And that's how I feel that their preparation policy, I guess, was the reason why I feel like I contracted Covid.

*Id.* at 30.

6

Mr. Windom claims he has lingering shortness of breath from COVID-19, but no other symptoms. *Id.* at 30-31. No medical professional has attributed Mr. Windom's shortness of breath to his 2020 Covid-19 infection. *Id.* at 34.

## III.
## Discussion

### A. Personal Involvement

As a preliminary matter, "[i]ndividual liability under § 1983 ... requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). Here, it's undisputed that Mr. Windom he had no personal interactions with Mr. Gentry.  It's also undisputed that Mr. Gentry was not employed at Pendleton during the time Mr. Windom claims he received inadequate medical care. Summary judgment is therefore **granted** to Mr. Gentry on Mr. Windom's claims. Dkt. 126-3 at 18, 28; *see* dkt. 126-2.

### B. Practice-or-Policy Claim Against Wexford

The Court now turns to whether Wexford is entitled to summary judgment. Private corporations acting under color of state law—including those that contract with the state to provide essential services to prisoners—are treated as municipalities for purposes of Section 1983. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). To prevail on a claim against Wexford, Mr. Windom must first show that he was deprived of a federal right, and then he must show that the deprivation was caused by a Wexford custom or policy or failure to implement a needed policy. *Id.* Wexford cannot be held liable under the

common-law theory of respondeat superior for its employees' actions. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021).

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Here, Medical Defendants do not dispute that Mr. Windom's COVID-19 infection was an objectively serious medical condition. Dkt. 125 at 11. To prove a constitutional deprivation, Mr. Windom must show that Wexford acted with deliberate indifference—that is, that through its policies, practices, or customs, it disregarded a serious risk to his health. *Dean*, 18 F.4th at 234–35. Deliberate indifference requires more than negligence or even objective recklessness. *Id.* at 241. Mr. Windom "must provide evidence that [Wexford] actually knew of and disregarded a substantial risk of harm." *Id.*

Mr. Windom designates no evidence that any Wexford staff was

deliberately indifferent to his COVID-19 infection. Mr. Windom's chief concern after he tested positive for COVID-19 was his injured hand, for which he received Tylenol, an x-ray, and a referral to an outside specialist. Mr. Windom did not submit health care request forms to obtain treatment for COVID while he was at Pendleton. By the time he was transferred to Westville and seen by a nurse there, he reported feeling fine and was asymptomatic. Dkt. 126-1 at 31-32, 57; dkt. 126-3 at 22-26, 34.

Last, Mr. Windom has not designated evidence showing that any injury was caused by a Wexford policy, practice, or custom, and the undisputed evidence reflects that the decision to place inmates together in the gym was made by State Defendants. *Dean*, 18 F.4th at 235; *see Johnson v. Prentice*, 29 F.4th 895, 905 (7th Cir. 2022) ("The *Monell* claim against Wexford itself suffers from two deficiencies: there is no proof of an underlying constitutional violation . . . nor any evidence that an institutional policy caused such a violation.") (citations omitted).

Accordingly, summary judgment is **granted** to Wexford.

## IV.

## Conclusion

For the foregoing reasons, Medical Defendants' motion for summary judgment, dkt. [124], is **granted**. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 9/30/2025

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

AARON D. WINDOM
109441
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

All Electronically Registered Counsel